## THOMAS v. GUY B. WAITE CO.

(Supreme Court, Appellate Division, Second Department.   June 8, 1906.)

1. DISCOVERY—INSPECTION OF BOOKS OF ADVERSE PARTY.

In an action for money due under an agreement by which defendant employed plaintiff's assignor as superintendent of its fireproof construction for an amount equal to a specified per cent. of the net profits of the business, plaintiff is entitled to an inspection of defendant's books for the purpose of preparing for trial.

[Ed. Note.—For cases in point, see vol. 17, Cent. Dig. Discovery, §§ 110–112.]

2. SAME.

The fact that the employé had had access to the books did not deprive plaintiff of the right to inspect them.

3. SAME.

Where an employer contracted that an employé was to receive as compensation a specified per cent. of the net profits of the business, the employer must have foreseen that the only practical way of reaching a basis on which the employé's percentage might be figured was an inspection of the employer's books, and the right to inspect the books was not affected by the fact that the employé had become a business competitor of the employer.

Appeal from Special Term, Kings County.

Action by George Palmer Thomas against the Guy B. Waite Company. From an order denying a motion for leave to inspect the books of defendant, plaintiff appeals. Reversed, and motion granted.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, HOOKER, and MILLER, JJ.

Grant C. Fox, for appellant.

Jesse Grant Roe (Rastus S. Ransom, on the brief), for respondent.

HOOKER, J.  Plaintiff's assignor, Pierce, by a contract in writing, was employed by the defendant as superintendent of its fireproof construction for a period of one year from the 1st day of July, 1903, and was to receive for his services the sum of $30 per week and at the completion of the year's work there was to be paid him an amount equal to 10 per cent. of the net profits of the business.  The complaint alleges that the agreement of hiring was renewed verbally for another year from the 1st day of July, 1904, and that there is due to the plaintiff, as owner of the claim, a large sum of money, balance due and unpaid from the percentage that Pierce, under the terms of the contract, was entitled to receive of the net profits of the business of the defendant.  The answer denies that there is any sum of money due, denies that the contract in its exact terms was renewed verbally, and alleges that for the year commencing July 1, 1904, Pierce was merely to receive 10 per cent. of the net profits realized upon the jobs superintended by him, and further alleges payment to Pierce in full.  This is an appeal from an order denying plaintiff's motion for leave to inspect the books, papers, letters, and documents in the possession of the defendant, which show what the net profit of the business of defendant was during the two years from July 1, 1903, to July 1, 1905.

Pierce left the defendant's employ shortly after the 1st day of July, 1905.  He had been with it a number of years, and had acted as book-

keeper for two or three years prior to the time he assumed the duties of superintendent. While he was bookkeeper, he became familiar with the defendant's books and its methods of doing business, and even after the 1st day of July, 1903, he had, until he left defendant's employ, free access to the books and sometimes inspected them, notably about the 1st of July, 1904, when he himself drew off a statement of the net profits of the defendant's business for the preceding 12 months, on the basis of which figures he and the defendant figured on the money deemed to be his rightful share of these profits under the contract to which reference has been made. No such statement, however, was prepared by him at the close of the next 12 months, and the plaintiff's complaint alleges that the profits were very much larger then than they had formerly been, and hence he was entitled to receive, as the owner of Pierce's claim for salary, a sum far in excess of the moneys that had been paid Pierce at the time of his severing his connection with the defendant.

The papers read in support of the motion showed the existence of entries in the defendant's books, their possession or control by the defendant, the particular information required, the materiality of the matter sought for, the necessity of inspection, and demand and refusal. While discovery for the purpose of preparing the trial is in some cases granted only when a preponderating necessity therefor appears, the nature of the agreemnt between Pierce and the defendant, and the consequent character of this action, seem to give to the plaintiff the privilege of inspection almost as a matter of right, unless bad faith be shown. In Veiller v. Oppenheim, 75 Hun, 21, 26 N. Y. Supp. 1051, the facts were similar to those at bar, and there the court said:

"We think, however, there is a third class, of which the present is a good illustration, in which, while the relation between the parties may be that of employé and employer, or coworkers, in one or more aspects it takes on the character of a copartnership. Here the plaintiff had a direct interest in the profits and losses of the business, his percentage being fixed upon the profits, which he was entitled to receive in lieu of salary. Where such relation is admitted, as in this case, whether such relation constitutes the plaintiff a partner, or a principal bringing business to the firm, or an employé entitled to a share of the profits, or a coworker with them in the general business, we think, as argued by the respondent, that 'so long as the plaintiff in one manner or another, under one name or another, was entitled to a portion of the proceeds of the common venture,' a prima facie case is presented entitling those interested in that venture to an inspection, where necessary, of the books of account containing a record thereof, and to all the information that can be derived from them, and it is only where it is apparent that the application is made in bad faith that such inspection should be denied."

Brigham v. Zaiss, 48 App. Div. 144, 62 N. Y. Supp. 706, too, is similar in its facts, and there it was said that the plaintiff has no way of ascertaining what the net amount is, except from the defendants themselves, or from an inspection of their books and accounts. And an order denying the motion for discovery was there reversed.

The objection that the plaintiff once had complete access to all these books and papers does not assist the defendant upon this motion; for unless the plaintiff availed himself of the privilege of access, or should have done so, he is still entitled to know from the only practicable source of information what may be the advantage he has derived un-

der the contract made with the defendant. So, too, the fact that he did at times refer to the books, and may perhaps be charged with having once been in possession of at least part of the facts by them disclosed, cannot avail the defendant; for it stands to reason that such information as the plaintiff in this case must needs have to prove his cause of action may not be carried in memory, for there were, as appears by the papers, over 50 different contracts for fireproofing, the work under each of which was full of detail and involved the carrying of many accounts on both sides of the ledger.

The objection that this application is made actually in behalf of the plaintiff's assignor, who is now a competitor in defendant's business, for the purpose of embarrassing its conduct, is unsupported by the papers. When the defendant entered into a contract it must have foreseen that the only practical way of reaching a basis upon which Pierce's percentage might be figured was an inspection of these books, and neither Pierce, nor his assignee, may be held to have any lesser right to inspect the books simply because the former is now a business competitor of the defendant.

The order denying the motion should be reversed, with $10 costs and disbursements, and the motion granted, with costs. All concur.